IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALEXIS DOE,

     Plaintiff,

             v.

MOREHOUSE COLLEGE, INC. and CLARK
ATLANTA UNIVERSITY, INC.,

     Defendants.

Civil Action No.
1:21-cv-02572-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant Clark Atlanta University's (Clark) motion to dismiss Count III of Plaintiff Alexis Doe's First Amended Complaint [ECF 24] and Defendant Morehouse College, Inc.'s (Morehouse) motion to dismiss Doe's First Amended Complaint [ECF 25].[1] After careful consideration of the parties' briefing, and with the benefit of oral argument, the Court **GRANTS** Clark's motion to dismiss and **GRANTS IN PART** and **DENIES IN PART** Morehouse's motion to dismiss. Doe's deliberate indifference claim against Clark and her official policy claim against Morehouse are **DISMISSED**.

---

[1] Also before the Court is Clark's motion to dismiss Doe's original complaint [ECF 11]. The Court denies as moot Clark's first motion to dismiss.

## I.    Background

The following well-pled allegations are accepted as true for purposes of this Order.[2] While enrolled as a student at Spelman College,[3] in October 2017, Doe was raped by a Morehouse student, JK,[4]  at his off-campus apartment. Doe became pregnant and decided to terminate the pregnancy.[5] Though he initially agreed that Doe should terminate the pregnancy, JK quickly changed his mind and began a campaign of harassment against Doe.[6] Over the next three years, JK, with the help of three Clark students, harassed and extorted Doe, threatened her with physical violence, posted about Doe on social media, and intimidated her at school events.[7]

In February 2018, Spelman indicated it would notify Morehouse of the harassment.[8] Doe herself disclosed the rape and harassment to Morehouse's Title

---

[2]    *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[3]    ECF 16, ¶ 1.

[4]    *Id.* ¶¶ 40–41, 46. Though Doe identifies her assailant by name in her First Amended Complaint, she refers to him as "JK" throughout, and all parties refer to him as either "JK" or "JD" (for John Doe) in their briefing.

[5]    *Id.* ¶ 51.

[6]    *Id.* ¶¶ 52–53.

[7]    *Id.* ¶¶ 53–58, 64–80.

[8]    *Id.* ¶¶ 55–56.

IX coordinator in April 2018,[9] and officially reported the rape in June 2018,[10] but Morehouse failed to take any action against JK and did not resolve Doe's claims until June 2020, after Doe graduated.[11] Doe reported the involvement of the Clark students to Clark and, in October 2018, Clark sanctioned those students, though it failed to tell Doe what those sanctions were or what protective measures it had put in place.[12]

Spelman, Morehouse, and Clark are three of the Historically Black Colleges and Universities that make up the Atlanta University Center Consortium (AUC).[13] Undergraduate students who attend an AUC institution may register for classes at any other AUC institution.[14] The AUC institutions are located on one tract of land and the students can walk freely between them as if they were one larger campus.[15] Doe chose to enroll in Spelman because of the AUC and the availability of cross-registration, which allowed her to pursue a public health major on the pre-

---

[9]  *Id.* ¶ 64.

[10]  *Id.* ¶ 66.

[11]  *Id.* ¶ 83.

[12]  *Id.* ¶ 69.

[13]  *Id.* ¶ 2.

[14]  *Id.* ¶ 22.

[15]  *Id.* ¶ 24.

medical school track because some required classes were offered by Clark and Morehouse.[16] However, because of the harassment she endured, Doe changed her major to sociology to avoid taking classes anywhere but Spelman and, in doing so, was unable to stay on the pre-med track.[17] Doe also avoided AUC services, events, and clubs to prevent further interaction with her harassers.[18] In the summer of 2019, Doe accepted a paid research position and moved onto Morehouse's campus because she believed JK would not be on campus, but after Morehouse's Title IX coordinator informed JK that Doe was residing there, Doe moved into temporary housing for her own protection.[19]

Doe attributes her sexual assault and Morehouse's failure to appropriately respond to her reports on the institution's culture of hypermasculinity and discrimination.[20] She alleges that Morehouse fails to educate its students on consent and sexual misconduct,[21] frequently mishandles reports of sexual assault

---

[16] *Id.* ¶ 16.

[17] *Id.* ¶ 67.

[18] *Id.* ¶¶ 65, 72–74.

[19] *Id.* ¶ 77.

[20] *Id.* ¶¶ 28–37.

[21] *Id.* ¶ 33.

(which fosters a culture of sexual violence),[22] and has unusually frequent turnover with Title IX coordinators.[23] As a result, Doe alleges, women at Spelman and other AUC institutions are more vulnerable to sexual violence,[24] such as the sexual violence she experienced.[25]

Doe filed suit against Morehouse and Clark, alleging discrimination in violation of Title IX, 20 U.S.C. § 1681, based on both institutions' alleged deliberate indifference to the sexual assault and harassment she reported,[26] and Morehouse's alleged official policy permitting practices of sexual hostility and violence.[27] Both Morehouse and Clark move to dismiss, arguing that Doe has failed to state a claim and that her claims are barred by the applicable statute of limitations.[28] Doe responded in opposition to both motions,[29] and the institutions filed replies in support.[30] The Court held oral argument on both motions on June 22, 2022.

---

[22]  *Id.* ¶ 34.

[23]  *Id.* ¶ 35.

[24]  *Id.* ¶ 37.

[25]  *Id.* ¶ 38.

[26]  *Id.* ¶¶ 100–15.

[27]  *Id.* ¶¶ 96–99.

[28]  ECF 24 (Clark Mot. Dismiss); ECF 25 (Morehouse Mot. Dismiss).

[29]  ECF 30 (Opp. Morehouse Mot. Dismiss); ECF 31 (Opp. Clark Mot. Dismiss).

[30]  ECF 32 (Morehouse Reply Mot. Dismiss); ECF 33 (Clark Reply Mot. Dismiss).

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n*, 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 322 (11th Cir. 2009).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III.    Discussion

Morehouse argues that Doe is impermissibly attempting to hold it strictly liable for the sexual assault, which also occurred outside the applicable two-year limitations period, and that her deliberate indifference claim fails to meet the elements articulated in *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999).[31] Clark similarly argues that the relevant conduct occurred outside the two-year limitations period, but also argues that Doe's claims fail because she lacks standing and failed to allege that the conduct of the Clark students was severe and pervasive or that Clark's response was unreasonable.[32]

The Court disagrees with Morehouse's characterization of Doe's claims and finds that she has stated a claim for deliberate indifference that is not time barred.

---

[31]    ECF 25-1, at 5–6.

[32]    ECF 24-1, at 3–4.

The Court also finds, however, that Doe failed to state an official policy claim against Morehouse, that her official policy claim is barred by the applicable statute of limitations, and that she has failed to state a claim of deliberate indifference against Clark.

### A.      Deliberate Indifference Claim Against Morehouse

To preface, the Court is unpersuaded by Morehouse's attempt to characterize Doe's claims as pertaining to the sexual assault itself. Doe alleges that, after the assault, JK harassed and extorted her for terminating her pregnancy,[33] harassed and threatened her for reporting the extortion and the assault,[34] recruited Clark students to harass and threaten her,[35] and that Morehouse not only failed to act in response to these actions,[36] but fostered an environment that encouraged this behavior.[37] So contending that Doe's deliberate indifference claim is akin to holding Morehouse strictly liable for the sexual assault is flatly wrong. With this understanding, the Court considers the sufficiency of Doe's deliberate indifference claim.

---

[33]   ECF 16, ¶¶ 52–53.

[34]   *Id.* ¶¶ 57–58, 79.

[35]   *Id.* ¶¶ 57, 64–65, 75, 80.

[36]   *Id.* ¶¶ 100–06.

[37]   *Id.* ¶¶ 96–99.

### 1.    Doe states a claim for deliberate indifference against Morehouse.

Interpreting *Davis*, the Eleventh Circuit has articulated a four-prong analysis for student-on-student harassment. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007). First, the defendant must be a Title IX funding recipient. *Id.* (citing *Floyd v. Waiters*, 133 F.3d 786, 789 (11th Cir.), *vacated on other grounds*, 525 U.S. 802 (1998), *reinstated*, 171 F.3d 1264 (11th Cir. 1999)). Second, an official with authority to take corrective action must have actual knowledge of the alleged harassment. *Id.* (citing G*ebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). Third, the funding recipient must have acted with deliberate indifference to the known harassment in such a way that "subjects" the plaintiff to discrimination. *Id.* (citing *Davis*, 526 U.S. at 633). Fourth, the discrimination must be "'so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit.'" *Id.* (quoting *Davis*, 526 U.S. at 633).

Morehouse argues that Doe's deliberate indifference claim fails because (1) she did not allege that Morehouse had control over the context or circumstances of the alleged sexual assault; (2) she did not allege any details regarding Morehouse's investigation; and (3) she failed to allege that Morehouse's

response subjected Doe to further harassment or, relatedly, failed to allege that any post-notice harassment was severe, pervasive, and objectively offensive.

### i.    Substantial Control

As discussed, the Court rejects Morehouse's argument that Doe's deliberate indifference claim is based solely on her report of the alleged sexual assault. Doe aptly responded to Morehouse's position, stating "the Title IX liability is not based upon the sexual assault that happened across the street from Campus, it is based upon the on-campus hostile education environment and other acts of harassment that occurred once the school was on notice of the report of rape."[38] Whether Morehouse could exercise control over JK's actions at his off-campus housing at the time of the assault is irrelevant to the deliberate indifference claim. What is relevant is whether the allegations, taken as true, support a finding that Morehouse could exercise control over JK after it was on notice of the harassment. The Court finds that they do.

A Title IX funding recipient can only be held liable for deliberate indifference in circumstances where it "exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S.

---

[38]   ECF 30, at 7.

at 645. This includes, of course, conduct that "occurs during school hours and on school grounds," but also where the students are involved in school activities under school employees' supervision. *Id.* at 646.

The conduct alleged by Doe, pre- and post-reporting of her rape, occurred on campus and through social media.[39] The Complaint sufficiently alleges that Morehouse's responsibility extended to JK's alleged behavior on the AUC campuses, other than Morehouse's, because his actions either implicated or took advantage of the unique relationship between the AUC institutions, including the availability of open registration, jointly held events, and common facilities and resources. JK's harassment, as alleged, precluded Doe from taking advantage of these resources and several of the incidents occurred at joint-AUC events. Morehouse, therefore, "retain[ed] substantial control over the context in which the harassment occur[ed]," and, importantly, over JK while he was attending Morehouse. *Id.*

Moreover, while schools are significantly constrained in their regulation of students' social media use, "severe bullying or harassment targeting particular individuals" and "threats aimed at teachers or other students," such as the threats

---

[39]   *Id.* ¶¶ 57, 58, 64, 79.

JK and the Clark students directed at Doe, fall within the types of behaviors that are appropriately addressed by school administration. *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 141 S. Ct. 2038 (2021). Doe adequately alleged that JK engaged in conduct substantially within Morehouse's control.

### ii.   Deliberate Indifference

The key inquiry in assessing whether Morehouse acted with deliberate indifference to Doe's report is whether its "response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances." *Williams*, 477 F.3d at 1295 (quoting *Davis*, 526 U.S. at 648). As alleged, Morehouse was aware of the sexual assault and the harassment by at least April 2018, when Doe told Morehouse's Title IX coordinator, who discouraged her from officially reporting the conduct.[40] After this meeting, Morehouse allegedly failed to take any action to either discourage JK from harassing Doe or to protect Doe from further contact.[41]

Despite knowing of the sexual assault and harassment, in the summer of 2019, Morehouse's new Title IX coordinator informed JK that Doe was residing on Morehouse's campus for a paid research position and, because of this disclosure,

---

[40]   ECF 16, ¶¶ 61–63.

[41]   *Id.* ¶¶ 65–66, 82–83.

Doe moved into temporary housing.[42] Then, in October 2019, JK shoved Doe after he was prevented from coming into a Spelman and Morehouse homecoming event because of a court-issued restraining order she secured against him.[43] Doe reported this encounter to Morehouse and, as alleged, Morehouse did nothing in response.[44] Morehouse finally concluded its investigation into Doe's sexual assault and harassment after her graduation from Spelman, nearly two years after she made her official report.[45] If true, these allegations support a finding that Morehouse's response to Doe's report was clearly unreasonable under the circumstances. *See Williams*, 477 F.3d at 1282 (allegations that university delayed resolving sexual assault claims for eleven months and failed to take corrective or protective measures prior to resolution sufficiently stated claim for deliberate indifference).

Morehouse also makes much of Doe's failure to allege any details about Morehouse's investigation of her claims. It asks the Court to disregard Doe's claims because she alleges an investigation took place but nothing more. At this

---

[42] *Id.* ¶¶ 77.

[43] *Id.* ¶¶ 78–79.

[44] *Id.* ¶ 82.

[45] *Id.* ¶ 83.

stage, however, the Court cannot infer that the investigation was thorough, as that would be construing the allegations in Morehouse's favor. The Court is bound to the four corners of the First Amended Complaint, which adequately alleges that Morehouse acted with deliberate indifference.

### iii.    Subjected to Further Harassment

Morehouse also argues that Doe failed to allege that Morehouse's response, or lack thereof, subjected her to actual, actionable harassment.[46] Doe responds that, under Eleventh Circuit precedent, the "subjected to" element does not require that the plaintiff suffer post-notice harassment, and, regardless, she alleged that Morehouse's deliberate indifference subjected her to actual, actionable harassment.[47] The Court agrees with Doe.

Morehouse's argument turns on the meaning of "subjected to." Under *Davis*, a plaintiff alleging deliberate indifference must demonstrate that the indifference "subjects its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 644–45 (cleaned up).

---

[46]   ECF 25-1, at 15–20.

[47]   ECF 30, at 11–14.

Accordingly, Morehouse can only be liable if its deliberate indifference caused Doe to undergo harassment or made Doe vulnerable to harassment.

Morehouse cites the Sixth Circuit decision in *Kollaritsch v. Michigan State University Board of Trustees* for the proposition that, in order for a student to show that the school's deliberate indifference made her "subject to" harassment, she must show more than that she was simply made "vulnerable" to harassment. 944 F.3d 613, 622 (6th Cir. 2019). Rather, the student must show that she experienced actual, actionable harassment *because of* the school's deliberate indifference to state a claim. *Id.*

The Court respectfully disagrees with the Sixth Circuit's interpretation of *Davis*. In this Court's view, the Supreme Court in *Davis* outlined two distinct paths to liability for deliberate indifference:  "caus[ing] students to undergo harassment *or* mak[ing] them liable or vulnerable to it." 526 U.S. at 644–45 (emphasis added). The use of the disjunctive "or" makes it clear that a student who "undergo[es]" actual harassment post-notice has a claim, but so too does the student who is not protected from the potential of further harassment. Under the latter, a school subjects a student to ongoing harassment if it fails, post-notice, to correct the environment that makes harassment possible—regardless of whether the harasser chooses to exploit that environment. *See id.* at 645 ("subjecting students to

harassment," rather than actual further harassment, is the proscribed conduct under Title IX). Whether a student was actually harassed or was just made vulnerable to it is relevant to damages, but not to causation.

Even if the Court agreed with *Kollaritsch*, Morehouse is incorrect that the Eleventh Circuit has failed to speak on this issue. In *Williams*, the Eleventh Circuit held that the student stated a claim for deliberate indifference, in part, because the university "failed to take any precautions that would prevent future attacks," such as "removing from student housing or suspending the alleged assailants, or implementing a more protective sexual harassment policy to deal with future incidents." 477 F.3d at 1297. The university's alleged deliberate indifference to the student's report in that case did not, in fact, result in actual, actionable harassment. *Id.* Morehouse's argument that *Williams* "could not be clearer" in holding that the student must be subject to future harassment belies the facts of that case.[48]

Nevertheless, the Court is sensitive to the sweeping liability Title IX funding recipients could be exposed to if the relevant standard were merely vulnerability. The Court agrees with Morehouse that, to be held liable, a funding recipient's deliberate indifference must result in some type of injury, which must be more

---

[48]   ECF 32, at 12–13.

than the possibility of further harassment. Here again, *Williams* is instructive. Considering the "subject to" requirement, the Eleventh Circuit held that, at the motion to dismiss stage, a plaintiff "must allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff ***to further discrimination***." 477 F.3d at 1296 (emphasis added). *See also Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1284 (11th Cir. 2003) ("Under Title IX, recipients can only be held liable in a private damages action where their own deliberate indifference ***effectively causes*** the discrimination.") (emphasis added).

In the Title IX context, discrimination can be overt, such as sexual harassment, but it also includes being "excluded from participation in" or "denied the benefits of . . . any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. *See also Davis*, 526 U.S. at 650. "The statute makes clear that, whatever else it prohibits, students must not be denied access to educational benefits and opportunities on the basis of gender." *Id.* Accordingly, a Title IX funding recipient is liable for its deliberate indifference when it denies the student access to educational opportunities because it has caused her to experience or made her vulnerable to further harassment. *See Williams*, 477 F.3d at 1297.

Notably, the student's voluntary withdrawal from educational opportunities is insufficient, on its own, to show a denial of access. Instead, the

school's indifference must be linked to a "concrete, negative effect on either the ability to receive an education or the enjoyment of equal access to educational programs or opportunities." *Hawkins*, 322 F.3d at 1289 (plaintiffs being upset about harassment and faking sickness to miss school fell short of systemic effect of denying access to education); *cf. Williams*, 477 F.3d at 1297 (failure to take precautions that would protect plaintiff from assailants should she decide to come back to school denied her educational opportunities).

Here, Doe has adequately alleged that Morehouse denied her educational opportunities by making her vulnerable to further harassment. After notifying Morehouse of the sexual assault and related harassment, JK and the Clark students he enlisted continued their campaign of harassment against Doe.[49] As a result of this harassment, and her understanding that nothing was being done about it, Doe changed her major, gave up her pre-medical school track, and avoided AUC services and resources.[50] As alleged, a concrete example of Morehouse denying Doe an educational benefit through its deliberate indifference is when its Title IX

---

[49]   ECF 16, ¶ 66.

[50]   *Id.* ¶¶ 72–78.

coordinator told JK that Doe would be residing on Morehouse's campus for a summer research position, which caused Doe to move into temporary housing.[51]

Because the Court finds that actual post-notice harassment is not required for Title IX liability, it need not consider whether any post-notice harassment Doe allegedly experienced was severe and pervasive.[52] The Court finds, nonetheless, that the pre-notice and post-notice harassment Doe was subjected to was, as alleged, severe and pervasive. Contrary to Morehouse and Clark's assertions, Doe's allegations go beyond mere "name-calling" or tasteless, but typical, young adult behavior. As counsel for Doe persuasively explained at oral argument, the threats, harassment, and physical confrontations Doe endured over the course of her undergraduate career by her alleged rapist and his friends cannot be severed from the rape itself. A sexual assault, committed with impunity, can itself be "severe, pervasive, and objectively offensive," because the trauma of a sexual assault resonates with the victim long afterward. *See Stinson ex rel. K.R. v. Maye*, 824 F. App'x 849, 857–58 (11th Cir. 2020); *Williams*, 477 F.3d at 1293, 1297–98. Having that trauma consistently resurfaced by threats and harassment on school grounds is certainly enough to systematically deprive a victim of educational

---

[51]   *Id.* ¶ 77.

[52]   ECF 25-1, at 20–23.

opportunities. *See Stinson*, 824 F. App'x at 857–58 (gang-rape followed by inappropriate comments by school administrator and failure to take any remedial action were sufficiently severe to support Title IX claim).

### 2. Doe's deliberate indifference claim against Morehouse is not time-barred.

Morehouse argues that Doe's deliberate indifference claim is barred by the applicable two-year statute of limitations because her claim accrued on the date she was allegedly sexually assaulted, which happened more than three years prior to her filing suit.[53] In her briefing, Doe argued that the accrual date should be sometime between October 2019, when she was shoved by JK outside of a homecoming event and reported the incident to Morehouse,[54] and June 2020, when Morehouse concluded its investigation.[55] At oral argument, however, Doe argued that her claims accrued in April 2019, when she spoke with other students about Morehouse's failures to address complaints about sexual misconduct.[56] Though the Court disagrees with both parties' proposed accrual dates, it finds that Doe timely alleged a plausible deliberate indifference claim.

---

[53]   ECF 25-1, at 10–11.

[54]   ECF 16, ¶¶ 79–81.

[55]   *Id.* ¶ 83.

[56]   *Id.* ¶ 86.

The parties agree that the Court must apply Georgia's two-year statute of limitations period for personal injuries to Doe's Title IX claims. *M.H.D. v. Westminster Sch.*, 172 F.3d 797, 803 (11th Cir. 1999) (finding O.C.G.A. § 9-3-33 applied to Title IX claim for damages because it "is most closely analogous to a common law action for personal injury"). Doe's deliberate indifference claim, therefore, must have accrued on or after March 9, 2019.[57]

Even when a federal court borrows a state's limitations period, the court is nonetheless applying federal law. "Accordingly, although state law specifies the duration of the limitations period, federal law determines the date on which that period begins." *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1275 (11th Cir. 2014) (quoting *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1238 (11th Cir. 1999)). "The general federal rule is that the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights," and so the court is required "first to identify the alleged injuries, and then to determine when plaintiffs could have sued for them." *Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1322–23 (11th Cir. 2021).

---

[57] The parties operated under a tolling agreement from March 9, 2021, to the date of filing, June 24, 2021. ECF 16, at 25 n.2.

Determining when exactly a reasonably prudent person should have become aware of the facts supporting a deliberate indifference claim is no easy task. The nature of the claim is that, at some point following a report of sexual harassment, a Title IX funding recipient's failure to act amounts to an "official decision . . . not to remedy the violation." *Davis*, 526 U.S. at 642. The period of inaction necessary to support a deliberate indifference claim can vary and depends on the specific factual circumstances. *See Hill v. Cundiff*, 797 F.3d 948, 975 (11th Cir. 2015) (considering "cumulative events and circumstances" in determining whether actions or inactions constituted deliberate indifference).

Whether and when such deliberate indifference denied the student educational opportunities is similarly ambiguous. For example, in *Williams*, the Eleventh Circuit found that the university denied the plaintiff an educational opportunity, even though she withdrew from the university immediately after she was sexually assaulted, when it failed to take any action for eight months afterward. 477 F.3d. at 1297. By contrast, in *Hawkins*, the Eleventh Circuit held that the plaintiffs being upset about the harassment and faking being sick "four or five times" to avoid school was not a denial of access to educational programs or opportunities. 322 F.3d at 1289. The examples offered by the court as potentially

sufficient to show an educational impact were a decline in grades, change in demeanor, or change in classroom participation. *Id.*

To address this ambiguity, Morehouse suggests that the Court affix the accrual date to the date of the alleged assault. Morehouse cites *M.H.D.* in support, in which the Eleventh Circuit held that the sexual abuse the plaintiff endured was itself unlawful and, therefore, that the plaintiff had a legally cognizable cause of action at that time. 172 F.3d at 804. *M.H.D.* is distinguishable, however, because the claim there was that the abuse itself "was sufficiently severe and pervasive to constitute a hostile and abusive school environment and thus to render Westminster liable for money damages." *Id.* at 801. The Eleventh Circuit did not hold that a claim for deliberate indifference accrues at the time of the sexual assault, which makes sense because *M.H.D.* is a pre-*Davis* case and, therefore, the Eleventh Circuit did not apply the deliberate indifference framework.

Morehouse also appeals to principles of fairness, cautioning that a non-categorical accrual date would leave Title IX funding recipients open to liability for years, or even decades, beyond the date of a sexual assault. Morehouse's fears are unfounded. Given that actionable deliberate indifference must result in a "concrete, negative effect" on the plaintiff's equal access to educational opportunities, a Title IX plaintiffs' claims accrue during the time in which those

opportunities would be available to them. *Hawkins*, 322 F.3d at 1289. Moreover, Morehouse's proposed accrual date would potentially require plaintiffs to bring their claims before the school can be said to be deliberately indifferent, leaving them the option of pursing an unripe claim or risking dismissal on statute of limitations grounds.

Applying the federal standard for accrual, Doe's deliberate indifference claim could not have accrued on the date of the assault because Morehouse was not on notice and did not have an opportunity to act, or fail to act, in response to her reports on that date. Doe, accordingly, could not have known the facts that supported her deliberate indifference claim as of the date of the assault. The same is true for the alternative date Morehouse suggests, April 2018, when Doe reported the alleged assault to Morehouse's Title IX coordinator,[58] because Doe could not have known on that date that Morehouse would fail to act.

The Court is also not persuaded, however, by Doe's position that the accrual date is April 2019, when she allegedly spoke with other victims of sexual harassment by Morehouse students and first learned that Morehouse had an alleged practice of failing to respond to reports of sexual assault.[59] Accrual is

---

[58]   ECF 16, ¶¶ 63–64.

[59]   *Id.* ¶ 86.

measured objectively and does not depend on when the plaintiff actually knew she was injured. *Karantsalis*, 17 F.4th at 1322 (statute of limitations begins to run when plaintiff knows or has reason to know of the injury).

Though discovery may prove otherwise, the Court finds that, as alleged, Doe's claim for deliberate indifference accrued sometime in the summer of 2019, when Morehouse's Title IX coordinator informed JK that Doe was residing on Morehouse's campus for the summer and Doe was forced to move into temporary housing as a result.[60] This is the only concrete example of Morehouse denying Doe an educational opportunity—living on Morehouse's campus while conducting research there—by making her vulnerable to further harassment. Prior to this, at various points between April 2018 and February 2018, Doe alleges various choices she made to avoid seeing JK or the Clark students, which can fairly be characterized as similar to the students in *Hawkins* missing school.[61] Considered together, all of these missed educational opportunities could be sufficient to support Doe's alleged indifference claim, but for statute of limitations purposes, the Court finds that Doe knew or should have known of her claim by the summer

---

[60]   *Id.* ¶ 77.

[61]   *Id.* ¶¶ 65, 67, 73, 75.

of 2019. As this is within two years of March 9, 2021, her deliberate indifference claim is timely.

### B.    Official Policy Claim Against Morehouse

In addition to her deliberate indifference claim, Doe brings a novel "official policy" claim, alleging that Morehouse created a culture of sexual hostility and violence that resulted in JK sexually assaulting and harassing Doe.[62] Unlike Doe's deliberate indifference claim, her official policy claim does seek to hold Morehouse liable for JK's alleged actions. Morehouse moves to dismiss the official policy claim as unsupported by law and barred by the applicable statute of limitations.[63] The Court agrees that Doe has failed to state a claim for an "official policy," and, regardless, that any official policy claim is time barred.

Doe's official policy claim is akin to a "heightened risk theory" of deliberate indifference, in that it seeks to impose liability on a school because its actions made it more likely that a student would be sexually assaulted or harassed on school grounds. *Williams*, 477 F.3d at 1296 (knowledge that recruit had history of sexual violence and subsequent failure to supervise or train him could support heighted risk claim). Doe's official policy claim is significantly broader than the heightened

---

62    *Id.* ¶¶ 96–99.

63    ECF 25-1, at 24–29.

risk theory, however, because she seeks to impose liability based on a culture rather than on specific instances of similar misconduct.[64]

While an official policy claim is not foreclosed by Eleventh Circuit precedent, as Morehouse suggests, Doe's allegations about a culture of hypermasculinity are insufficient to state a plausible official policy claim. In the primary case cited by Doe, *Simpson v. University of Colorado Boulder*, the Tenth Circuit found that a Title IX recipient could be liable for an official "policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy." 500 F.3d 1170, 1178 (10th Cir. 2007). The court likened this theory of liability to municipal liability for an officer's constitutional violation under 42 U.S.C. § 1983, and noted that an "obvious need" can be established by knowledge of previous incidents or because the potential for such a violation was "highly predictable." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The court found that the evidence could support a finding that there was an obvious risk of assault during football recruiting events because of multiple reports of sexual assault and harassment by football players, a known lack of oversight during football recruiting events,

---

[64]   ECF 16, ¶ 37.

specifically related to alcohol and sex, and the football team leadership's apparent hostility to those alleging sexual harassment. *Simpson*, 500 F.3d at 1180–85.

Here, by contrast, Doe fails to allege facts that plausibly support a finding that the need for ***specific*** training or specific precautions was obvious. Doe alleges several anecdotes about the behavior of Morehouse students and how Morehouse has a high turnover of Title IX coordinators,[65] and alleges in a conclusory fashion that Morehouse fails to take allegations of sexual assault seriously,[66] but fails to specify what training is obviously needed. Troubling as the alleged culture at Morehouse may be, it does not rise to the level of deliberate indifference necessary to impose Title IX liability on an official policy claim. *See Raihan v. George Washington Univ.*, 324 F. Supp. 3d 102, 111 (D.D.C. 2018) (absent evidence of specific knowledge of heightened risk, failure to implement a policy amounts to "official negligence, not intent" which "is insufficient for Title IX liability").

Doe's official policy claim is also time barred. Doe alleges that Morehouse "created a heightened risk of sexual assault for female students," which resulted in her being sexually assaulted by JK and being subject to ongoing retaliation.[67]

---

[65]   ECF 16, ¶¶ 35(a)–(e).

[66]   *Id.* ¶¶ 35(f), (h), (k)–(l).

[67]   *Id.* ¶ 97.

Though Doe alleges that she was unaware of Morehouse's culture until April 2019, when she spoke to other survivors and advocates, the majority of Doe's examples of Morehouse's toxic culture pre-date her assault.[68] Accordingly, her official policy claim accrued on the date of the sexual assault because, at that time, further investigation would have revealed Morehouse's alleged official policy of deliberate indifference. *Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763, 784 (W.D. Tex. 2018) (plaintiffs' heightened risk claim accrued on the date of assaults where the assaults occurred after findings about alleged policy were released).

### C.   Deliberate Indifference Claim Against Clark

Clark similarly moves to dismiss for failure to state a claim and because Doe's claims are barred by Georgia's two-year statute of limitations. Clark argues that Doe lacks standing because she was never enrolled at Clark, that she cannot allege deliberate indifference, and that her claim accrued as early as October 2018, two and a half years prior to filing.[69]

---

[68]   *Id.* ¶ 35.

[69]   ECF 24-1, at 3–5.

1.      **Doe has standing to assert a deliberate indifference claim against Clark.**

Standing is a threshold issue, and so the Court will address it first. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Clark argues that Doe lacks standing to pursue her deliberate indifference claim because she was not a student of Clark and failed to allege that she enrolled in any classes at Clark.[70] While Clark focuses on Doe's status as a non-student, Doe responds that the proper focus is on whether educational opportunities were made available to her.[71] The Court agrees with Doe that entitlement to educational opportunities is the proper measure of standing for a Title IX claim, and that she has adequately alleged that Clark made educational opportunities available to her based on her enrollment at Spelman, another AUC university.

Starting with the text of the statute, nothing in Title IX limits actionable discrimination to that experienced by students. 20 U.S.C. § 1681(a). Instead, it provides that "[n]o *person* in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination *under any education program or activity* receiving Federal

---

70   *Id.* at 14–18.

71   ECF 31, at 10–14.

financial assistance." *Id.* A Title IX plaintiff can, therefore, be any person under an education program or activity of a funding recipient.

Clark cites to an unpublished Eastern District of Missouri case for the proposition that potential students lack standing to bring Title IX claims. *K.T. v. Culver-Stockton Coll.*, No. 4:16-CV-165 CAS, 2016 WL 4243965, at *4 (E.D. Mo. Aug. 11, 2016), *aff'd*, 865 F.3d 1054 (8th Cir. 2017). The court there focused on the language the Supreme Court used in *Davis*, that a funding recipient may be liable when it "subjects its *students* to harassment." 526 U.S. at 645 (punctuation omitted). It also noted that several circuits require that the plaintiff be a student as an element for a deliberate indifference claim. *K.T.*, 2016 WL 4243965, at *5 (citing *Simpson*, 500 F.3d at 1181, *Jennings v. University of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007) and *Frazier v. Fairhaven School Committee*, 276 F.3d 52, 66 (1st Cir. 2002)). None of these cases held, however, that non-students lack standing to assert a claim.

The Court is not persuaded that "student" is a magic word in the Title IX context. There is no legal test or definition for whether a person qualifies as a "student." Rather than limit standing to pursue Title IX claims to "students," whatever that means, the proper consideration is whether the person was entitled to an educational opportunity and, therefore, denial of that opportunity on the

basis of sex would be discrimination. *See Doe v. Brown Univ.*, 896 F.3d 127, 131 (1st Cir. 2018) ("The 'subject to discrimination under' clause covers situations where a person—while participating in a funding recipient's educational program or activity—has inferior access to or is less able to enjoy the benefits of a particular educational program relative to members of the opposite sex. Thus . . . to experience sex 'discrimination under an education program or activity,' that person must suffer unjust or prejudicial treatment on the basis of sex while participating, or at least attempting to participate, in the funding recipient's education program or activity.") (quoting *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 521 (1982)); *Doe v. Univ. of Kentucky*, 971 F.3d 553, 558 (6th Cir. 2020) (finding person not enrolled at university raised genuine dispute as to whether she was denied benefits of an education program or activity where she lived at residence hall, paid for housing and dining plans, and had realistic goal of enrolling).

Still, the Court agrees with Clark that something more than a possibility of enrollment is required to have standing to bring a Title IX claim. *See Brown Univ.*, 896 F.3d at 131 (student enrolled at nearby university was not denied educational benefit where she did not participate, or intend to participate, in defendant's educational programs or activities). Here, however, as alleged, there was more than a mere possibility that Doe would participate in Clark's educational

programs or activities. Doe alleges that the nature of the AUC permitted her to enroll in any of Clark's classes, without having to be independently admitted,[72] that she intended to take classes on Clark's campus for her pre-med major,[73] that she was involved in clubs with Clark's students and on Clark's campus,[74] and that she was denied access to these opportunities because she was being sexually harassed by students attending Clark.[75] Doe, therefore, has alleged facts establishing her standing to assert a claim for deliberate indifference against Clark.

### 2.   Doe failed to allege a deliberate indifference claim against Clark.

Nevertheless, the Court finds that Doe has not adequately alleged that Clark responded to her reports with deliberate indifference. To state a claim for deliberate indifference, a student must allege that the Title IX funding recipient (1) knew of the alleged harassment and (2) acted in a manner that is clearly unreasonable under the circumstances. *Davis*, 526 U.S. at 648–49. A court may, in an appropriate case, identify that a response was not "clearly unreasonable" as a matter of law on a motion to dismiss. *Id.*

---

[72]   ECF 16, ¶¶ 25–26.

[73]   *Id.* ¶ 26.

[74]   *Id.* ¶¶ 73–75.

[75]   *Id.* ¶¶ 67, 73–75.

Doe failed to allege when she first reported the harassment to Clark or what exactly she reported. She alleges that she requested information from Clark in October 2018 and was informed that the students who threatened her would receive sanctions, though, in violation of its own Title IX policy, Clark did not disclose the nature of those sanctions.[76] Doe was then harassed by the same Clark students at events in February and October 2019, but Clark took no action in response to Doe's reports.[77] Unlike her allegations against Morehouse, Doe fails to allege that Clark was on notice that she was sexually assaulted by JK and being threatened and extorted by JK and the Clark students in relation to the sexual assault. Absent allegations of what Clark was on notice of, the Court cannot say it acted with deliberate indifference in response to Doe's reports, particularly where Clark did in fact respond to one of Doe's complaints.

## IV. Conclusion

The Court **GRANTS** Clark's motion to dismiss Count III of Doe's First Amended Complaint [ECF 24]; **GRANTS IN PART and DENIES IN PART** Morehouse's motion to dismiss [ECF 25]; and **DENIES AS MOOT** Clark's first motion to dismiss [ECF 11].

---

[76]   ECF 16, ¶ 69–70.

[77]   *Id.* ¶¶ 75–76.

Doe's deliberate indifference claim against Clark and her official policy claim against Morehouse are **DISMISSED WITHOUT PREJUDICE**. Doe is granted leave, within 14 days of this Order, to file an amended complaint that seeks to cure the deficiencies addressed herein, and in doing so may add the allegations proposed in her motion to amend. Accordingly, Doe's motion for leave to amend [ECF 40] is **DENIED AS MOOT**.

**SO ORDERED** this 16th day of August, 2022.

Steven D. Grimberg
United States District Court Judge